

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00556-CV
No. 04-13-00557-CV

The **STATE** of Texas, **FOR THE BEST INTEREST AND PROTECTION OF L.G**.

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2013MH2278 & 2013MH2254
Honorable Polly Jackson Spencer, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  December 18, 2013

AFFIRMED

L.G. appeals the trial court's judgment ordering temporary commitment for inpatient mental health services and its order for the administration of psychoactive medication. L.G. argues the evidence is legally and factually insufficient to support the court's orders. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

L.G. is a thirty-five year old female, who was taken to the hospital by police who responded to a call that L.G. was in a neighbor's yard with a gun. A nurse at the facility filed an application for temporary commitment for mental illness. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.001

---

[1] The Honorable Polly Jackson Spencer is the presiding judge of Probate Court No. 1 of Bexar County, Texas, and Judge Spencer signed the judgment and order that are the subject of this appeal. However, Associate Judge Oscar Kazen presided over the hearing on the application for temporary commitment and the petition for order to compel psychoactive medication and orally rendered the orders.

(West 2010). The application was accompanied by a physician's certification of medical examination for mental illness. The court subsequently ordered L.G. held in protective custody, and she was transferred to Methodist Specialty and Transplant Hospital. At Methodist, L.G. was examined and evaluated by a psychiatrist, Dr. Francisco Vidal. Three days after the transfer, Dr. Vidal filed a certification of medical examination for mental illness and a petition for an order to compel psychoactive medication.

The trial court conducted a hearing on the pending motions at which L.G. and Dr. Vidal testified. The parties stipulated to Dr. Vidal's qualifications as an expert. He testified he had met with L.G. each day since she arrived at Methodist and concluded that she is mentally ill. Based on his personal knowledge, L.G.'s history, and medical records, Dr. Vidal diagnosed L.G. as having schizophrenia, the paranoid type.

Dr. Vidal testified without objection that L.G. was taken to the hospital after the police were called to her residence because L.G. was in her neighbor's yard with a gun "looking for some type of pedophiles." The doctor stated he had tried to discuss with L.G. the events that led to her being taken to the hospital. The first time they spoke about it, L.G. told him an FBI agent had given the gun to her, but in subsequent conversations, L.G. denied the whole event.

Dr. Vidal testified L.G. has delusions that make her very suspicious and guarded, and that she is always trying to protect herself. Dr. Vidal summarized L.G.'s delusions as follows:

> [S]omehow her DNA is not of a 35 year old lady, it's an eight-year-old girl. And somehow there are some, as she calls them, mass of pedophiles that are . . . stealing her body parts, stealing her babies from her uterus and harassing her all the time. They were harassing her in the northeast when she lived in New York, and that's why she moved to Texas, but they found her here, and she needs to protect herself from them. . . . She wears a lot of devices that she has designed to protect herself from radiation and electricity that those people have tried to do on her. She has a tinfoil hat with magnets to protect her from that. She has some magnets in different parts of her body to help her hearing, to hear better, to move better, and to protect her from those, as she calls them, . . . pedophiles.

Dr. Vidal testified L.G.'s delusions disconnect her from reality; her life is dedicated to protecting herself from the threats she perceives because of the delusions. He testified he personally witnessed an episode when L.G. started interacting with one of her hallucinations and began crying and screaming. When hospital staff members tried to help her, she became aggressive by hitting and punching them, thinking she was defending herself. L.G. was isolated in her room and she calmed down without the need for emergency medication. When Dr. Vidal tried to discuss the incident with L.G. minutes later, she denied it happened. Dr. Vidal testified the staff reported this sort of aggressive behavior to him on a daily basis since L.G. arrived at the hospital.

Dr. Vidal testified that as a result of L.G.'s mental illness, she is likely to cause serious harm to others. He testified her mental illness is causing her to suffer severe and abnormal mental, emotional, or physical distress and is causing substantial mental or physical deterioration of her ability to function independently. He testified that L.G. is unable to provide for her own safety and activities of daily living because "her mind and her whole day is dominated by her symptoms of psychosis." He observed that she was deteriorating every day, and testified that the longer she remained psychotic and unmedicated, the worse her prognosis will be. He believes that as a result of her mental illness, L.G. is unable to make a rational and informed decision about whether to submit to treatment. He further testified that the hospital was the least restrictive appropriate setting for her at that time, and that his plan was to treat her with appropriate medications to effectively treat the delusions.

L.G. testified that she owns a firearm, but denied she told anybody that the FBI gave it to her. Rather, she testified she bought it after the FBI and Homeland Security told her she needed a gun and a lieutenant told her she could not go anywhere without it. L.G. testified that she was not waving around a gun on the day she was taken to the hospital. She testified that people had been throwing garbage on her property, so she "called the terrorist threats into Homeland Security and

FBI." L.G. testified that about seven police cars soon arrived and she realized they now understood the very severe threat she was facing. L.G. told the trial court she was outside her apartment when police arrived and she did not know whether the officers took her gun or put it back in her apartment when they searched it. L.G. gave other testimony that substantiated the delusional thinking summarized by Dr. Vidal. She testified she would not consent to the medications because "giving me these drugs is a capital murder charge."

The trial court found L.G. is mentally ill and ordered her temporarily committed to Methodist Specialty & Transplant Hospital. In its oral findings, the court found that a gun was involved in the precipitating incident and L.G. has demonstrated she poses a danger to the community. He found that L.G. is "operating disconnected" under delusions that control her day-to-day activity and that she is unable to have rational thoughts. She is unable to provide for her basic needs, including her safety and welfare because she is delusional.

After the court granted the motion for temporary commitment, the court reopened the evidence and Dr. Vidal testified in support of the petition to psychoactive medications. At the conclusion of the hearing, the trial court granted that petition.

## STATUTORY AUTHORITY

A trial court may order a proposed patient to receive temporary inpatient mental health services only if it finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

   (A) is likely to cause serious harm to himself;

   (B) is likely to cause serious harm to others; or

   (C) is:

> (i) suffering severe and abnormal mental, emotional, or physical distress;
>
> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>
> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West Supp. 2013). To be clear and convincing, the evidence before the trial court must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm "(1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." *Id.* § 574.034(d).

The court may order the administration of psychoactive medication to a patient who is under a court order to receive inpatient mental health services if it finds by clear and convincing evidence that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a), (a-1) (West 2010).

### STANDARD OF REVIEW

When appellant challenges the legal or factual sufficiency of the evidence to support findings made under a clear and convincing evidence standard, we review all of the evidence to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency).

In a legal sufficiency review, we examine the record in the light most favorable to the findings, assuming any disputed facts were resolved in favor of the findings if a reasonable factfinder could do so and disregarding any evidence the factfinder reasonably could have disbelieved. *See J.F.C.*, 96 S.W.3d at 266. The evidence is legally insufficient if no reasonable factfinder could have formed a firm belief or conviction that the matter to be proven is true. *Id.*

In a factual sufficiency review, we evaluate the disputed evidence to determine if it is "so significant" that a factfinder could not reasonably have formed a firm belief of or conviction on the challenged finding. *Id.* We may conclude the evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.* In our review, we remain mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we may not substitute its judgment with our own. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### SUFFICIENCY OF THE EVIDENCE – ORDER FOR TEMPORARY COMMITMENT

L.G. does not challenge the trial court's findings that she is mentally ill, that she is suffering severe and abnormal mental, emotional, or physical distress, or that she is unable to make rational decisions. Rather, she contends the evidence is insufficient to support findings by clear and convincing evidence that (1) she is likely to cause serious harm to others and (2) she is experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability to provide for her basic needs, including food, clothing, health, or safety. Only one of these statutory criteria must be proven to support the court's order for temporary mental health services. *Mezick v. State*, 920 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2).

L.G. argues the evidence that she poses a risk of serious harm to others is insufficient because the record does not contain any "direct evidence" of a recent overt act or a continuing pattern of behavior that tends to confirm the risk. *See id.* § 574.034(d)(1). She points out that Dr. Vidal admitted he did not personally observe the gun incident that precipitated her hospitalization. And L.G., the only other witness, denied it occurred. However, the statute does not require personal observation of the overt act. *See id.* § 574.034(d) (requiring "expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to . . . others"). Dr. Vidal gave unobjected-to testimony about his understanding of the incident—that "the police [were] called because she was with a gun in the neighbor's backyard looking for some type of pedophiles." Although L.G. denied the entire incident to the doctor and in her testimony she denied waving a gun around, she also testified she owned a gun, that "the lieutenant" had told her she should not go anywhere without it, and that she had called police because of "terrorist threats." She also testified that she was outside her apartment when the police arrived and she did not know whether the police had taken her gun or put it back in her apartment. A factfinder could reasonably infer from this evidence that L.G. felt severely threatened and was outside with a gun trying to protect herself from the threat.

L.G. also discounts Dr. Vidal's testimony about her aggression toward the hospital staff. She argues it is no evidence she poses a risk to others because the incident the doctor observed "is explainable by Appellant's resistance to involuntary treatment at the hospital," and "Appellant calmed down when she was isolated in her room" without needing emergency medication. However, Dr. Vidal testified the aggression he witnessed was not an isolated incident—hospital staff reported to him that L.G. exhibited this behavior every day. Moreover, Dr. Vidal did not characterize the incident as L.G. resisting involuntary treatment. Rather, he characterized it as L.G. "interacting with her hallucinations" and her attack on the staff as trying to defend herself

from the hallucinations. The factfinder could rationally infer that L.G. calmed down when she was isolated because there were no people present she perceived as a threat. We conclude that Dr. Vidal's testimony satisfies the statutory requirement that there be expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to others. *See id.* § 574.034(d).

A reasonable factfinder could conclude from the evidence that as a result of her mental illness, L.G. feels constantly threatened; that she carries a gun to protect herself; that L.G. has physically attacked other people she perceives are a threat to her; and that without treatment, L.G.'s delusions will only get worse. Considering the record in the light most favorable to the trial court's findings, a reasonable factfinder could find that as a result of L.G.'s mental illness she is likely to cause serious harm to others. Considering all of the evidence, both supporting and disputed, we also conclude the trial court could have reasonably formed a firm conviction or belief that L.G. was likely to cause harm to others. Accordingly, the evidence was both legally and factually sufficient to support the trial court's order of temporary commitment under subsection (B) of section 574.034(a)(2), and we affirm the order.

### SUFFICIENCY OF THE EVIDENCE – ORDER FOR ADMINISTRATION OF PSYCHOACTIVE MEDICATION

L.G. challenges the trial court's order to administer psychoactive medication solely on the ground the evidence is insufficient to commit her. *See id.* § 574.106(a)(1) (requiring clear and convincing evidence that patient is under a court order to receive inpatient mental health services in order to compel administration of medication). Because we have concluded the order for temporary inpatient services is supported by legally and factually sufficient evidence, we also affirm the medication order.

Luz Elena D. Chapa, Justice